**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01903-PAB-KMT

**FLOWROUTE INC.**

        Plaintiff,

  v.

**COMCAST CABLE COMMUNICATIONS, LLC, et al.**

        Defendants.

**SCHEDULING ORDER**

**1.  DATE OF CONFERENCE
AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

**Date of conference:**   January 30, 2017, 9:45 a.m.

**Appearing for Plaintiff:**

Tony S. Lee
Fletcher, Heald and Hildreth
1300 17th Street North
Suite 1100
Arlington, VA 22209
Email:  lee@fhhlaw.com

**Appearing for Defendants:**

Samuel L. Feder
Leah J. Tulin
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
sfeder@jenner.com
ltulin@jenner.com

Kathryn A. Reilly, Esq.

Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
reilly@wtotrial.com

## 2. STATEMENT OF JURISDICTION

The parties agree that this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 to the extent that Plaintiff's claims arise under the Communications Act of 1934, as amended, 47 U.S.C. §§ 201-202, 206-207, and 251, and 28 U.S.C. § 2201 (declaratory ruling).

Although the parties do not necessarily agree that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 or supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), the Court's exercise of jurisdiction pursuant to 28 U.S.C. § 1331 is sufficient for this action to proceed at this time.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.      Plaintiff:  Flowroute is a competitive telecommunications provider incorporated in the state of Nevada, with headquarters located in Seattle, Washington.  Flowroute is a communications provider focused on answering the needs of developers, SaaS service providers, and high-tech enterprises.  Flowroute's unique technology and network services provide customers with unparalleled performance, transparency and control of the voice communications that power their businesses.

Section 251(b)(2) of the Act, 47 U.S.C. § 251(b)(2) requires that local exchange carriers and other telecommunications providers provide local number portability ("LNP") in accordance with requirements prescribed by the FCC.  The FCC considers any attempt by an interconnected

VoIP provider or its local exchange carrier numbering partner to thwart an end user's valid porting request to be a violation of the Communications Act and the FCC's LNP rules.

Comcast knowingly trained its personnel responsible for processing number porting requests to implement actions and practices which violated the FCC's LNP rules, including the LNP process flows published by the North American Numbering Council which have been adopted by the FCC as part of its LNP requirements. Comcast did not de-provision or deactivate a telephone number from its network until well after the telephone number was supposed to have been ported away from Comcast and placed in service by the end user's new service provider. Comcast knew that this practice, and others, violated the FCC's LNP rules, and that its actions and practices would cause a degradation in service for end-users who ported telephone numbers away from Comcast and for the end-users' new service provider. In particular, Comcast knew that its porting practices would result in call routing and completion problems whereby calls from Comcast subscribers to end-users who had ported telephone numbers to a new service would be blocked.

Comcast implemented such actions and practices to induce end-users who had ported numbers away from Comcast to leave the new service provider, and possibly return to Comcast, based upon a misperception that the new provider's services were inferior to Comcast's services. Certain Comcast customers decided to discontinue service with Comcast and switch their telephone service to Flowroute. The telephone numbers for those customers were ported to Flowroute pursuant to the FCC's LNP rules. Based on the number porting requests submitted by those customers, which would have designated Flowroute as the new service provider, Comcast

knew or should have known that those customers had entered into a contractual or business relationship with Flowroute.

Comcast knowingly and intentionally implemented the aforementioned number portability actions and practices with respect to end-users who were porting telephone numbers away from Comcast to Flowroute.  Comcast implemented such actions and practices to induce Flowroute's customers who had ported numbers away from Comcast to terminate business and contractual relationships with Flowroute, and possibly return to Comcast, based upon a misperception that Flowroute's services were inferior to Comcast's services.

As a result of Comcast's unlawful actions, Flowroute seeks damages for unlawful call blocking for violation of 47 U.S.C. § 201; unlawful discrimination in violation of 47 U.S.C. § 202(a); failing to comply with requirements in violation of 47 U.S.C. § 251(b)(2); tortious interference with contract under state law; tortious interference with business relations under state law; and violations of the Colorado Consumer Protection Act.  Flowroute also seeks declaratory judgment that Comcast cannot implement number portability processes that impair the quality, reliability, or convenience of service for customers who ported telephone numbers from Comcast to Flowroute, and cannot block calls to Flowroute's customers.

   b.  Defendants:  Defendants, along with affiliated companies not party to this action, (collectively "Comcast"), provide video, broadband Internet, and voice telephony via interconnected Voice-over-Internet-Protocol ("VoIP").  Upon receiving a porting request from a new service provider, Comcast works diligently to ensure that the telephone number(s) identified in the request are timely ported to the new service provider and de-provisioned from Comcast's network in accordance with the FCC's rules.  Like other interconnected VoIP service providers,

Comcast also has practices and procedures in place to handle issues that may arise during the porting process. These include providing points of contact that other carriers may use to report porting issues and work with Comcast personnel to resolve such issues.

Beginning at some point in 2015, Flowroute used these carrier-to-carrier communication mechanisms to report that some calls from Comcast subscribers to certain telephone numbers that had been ported from Comcast to Flowroute may not have been completed. In keeping with the practices and procedures described above, Comcast promptly investigated any and all reported issues and worked with Flowroute to resolve them on a case-by-case basis. Comcast continued to work in good faith with Flowroute to resolve issues in this manner through June 2016, when Flowroute requested that Comcast implement a systemic fix to resolve the issues that Flowroute had reported. Both before this action was filed and since that time, Comcast has worked internally to develop and implement such a solution. In addition, Comcast has continued to work directly with Flowroute to avoid and address any issues arising during the development and implementation of that solution.

Comcast denies that it has violated Sections 201, 202, or 251 of the Communications Act, or that it is liable under any of the state law claims that Flowroute has alleged. Comcast in no way intended for its actions or practices to cause harm to Flowroute, its customers, or the public. Nor did Comcast intend for its actions or practices to interfere with Flowroute's existing or prospective business relationships or to induce Flowroute's subscribers to terminate their service with Flowroute and/or switch their service to Comcast. To the contrary, Comcast processed porting requests received from Flowroute and its subscribers consistent and compliant with all applicable legal requirements. Moreover, upon being made aware that calls from its own

customers to telephone numbers that had been ported from Comcast to Flowroute may not have been completed, Comcast worked diligently to resolve those issues promptly and cooperatively.

Furthermore, Flowroute cannot prove that Comcast's actions and practices caused Flowroute to suffer any damages.  In particular, Flowroute cannot prove either that its customers terminated their contracts with Flowroute or that potential customers chose not to enter into business relations with Flowroute due to Comcast's actions and practices, as opposed to the actions of Flowroute or other third parties for which Comcast is not responsible.  Even if Flowroute could prove causation (which it cannot), Flowroute cannot prove any resulting damages to Flowroute's profits, reputation, customer relationships, or market position with reasonable certainty, nor can it show that such damages were a reasonably foreseeable consequence of Comcast's actions and practices.

For these reasons, Flowroute is not entitled to recover damages for Comcast's alleged violations of 47 U.S.C. §§ 201, 202(a), or 251(b)(2); alleged tortious interference with contract and business relations under state law; or alleged violations of the Colorado Consumer Protection Act.  Nor is Flowroute entitled to a declaratory judgment or to any injunctive relief. Among other reasons, Flowroute cannot prove that it will suffer irreparable harm if Comcast's actions and practices are not enjoined.  In fact, Flowroute cannot show that it continues to suffer any harm at all as a result of Comcast's actions and practices.  And, even if it could, monetary damages would be more than adequate to compensate for any such harm.

## 4.  UNDISPUTED FACTS

The following facts are undisputed:

1. Plaintiff Flowroute is a competitive telecommunications provider incorporated in the state of Nevada, with headquarters located in Seattle, Washington.

2. Comcast is a provider of, among other things, voice telephone services.

3. Comcast Cable Communications, LLC is a Delaware Limited Liability Company.

4. Comcast Business Communications, LLC is a Pennsylvania Limited Liability Company.

5. Comcast Phone, LLC is a Delaware Limited Liability Company.

6. Comcast Cable Communications, LLC is the direct or indirect parent company of certain operating companies that are certified as competitive local exchange carriers in certain states, and that are registered with the FCC as competitive local exchange carriers and/or interconnected voice over Internet protocol ("VoIP") service providers.

7. Flowroute has requested that telephone numbers for Comcast customers be ported to Flowroute.

## 5. COMPUTATION OF DAMAGES

a. Plaintiff: Flowroute asserts that its damages can be calculated either as (1) the difference between the expected revenues before Comcast's unlawful actions, and the expected revenues after Comcast's unlawful actions; or (2) the difference between the valuation of Flowroute before and after Comcast's unlawful actions.

b. Defendants: At this point, Comcast does not seek damages from Flowroute, but expressly reserves the right to seek damages, costs, and attorney fees at a later time. Comcast denies that Flowroute is entitled to any damages in this case.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting. January 9, 2017

b. Names of each participant and party he/she represented.

Tony S. Lee and Mark DeSantis for Plaintiff. Leah J. Tulin and Kathryn A. Reilly for Defendants.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The parties will make Rule 26(a)(1) disclosures by January 30, 2017

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

See 6(c) above.

e. Statement concerning any agreements to conduct informal discovery.

The parties have not agreed to conduct informal discovery. However, during the course of discovery in this case, if it appears to all counsel that informal discovery would be productive, they will discuss and coordinate such informal discovery.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties will use a unified exhibit numbering system, and discovery documents will be exchanged in electronic format where such format is reasonable, and expect that they will enter into a Stipulated Document Production Protocol ("Production Protocol") for the production of documents and a Protective Order governing the handling, use, and disclosure of such documents. The parties agree that they will submit a proposed Protective Order to the Court by no later than February 17, 2017.

8

g.  Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties anticipate that claims or defenses will involve extensive electronically stored information ("ESI"). The parties have taken the following steps to:

(i)  preserve electronically stored information;

The parties have notified their clients of their obligation to preserve all records relevant to the litigation, including electronically stored information.

(ii)  facilitate discovery of electronically stored information;

Appropriate and relevant ESI will be produced pursuant to the parties' Production Protocol.

(iii)  limit the associated discovery costs and delay;

The parties have agreed to avoid the exchange of discovery in hard copy format where reasonable, and to produce appropriate and relevant documents pursuant to the Production Protocol. The parties will also be guided by the Sedona Principles regarding discovery of ESI.

(iv)  avoid discovery disputes relating to electronic discovery; and

The parties have agreed to work in good faith to resolve electronic discovery issues, pursuant to the Production Protocol.

(v)  address claims of privilege or of protection as trial- preparation materials after production of computer-generated records.

Privileged or otherwise protected materials will be identified by category, pursuant to the Production Protocol and/or Protective Order. The inadvertent production of documents

containing information protected by privilege or the work product doctrine does not constitute a waiver of those protections, and the parties agree to follow the procedures set forth in the Production Protocol and/or Protective Order with respect to such inadvertently produced documents.

      h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties were actively engaged in settlement discussions over the course of several months, but as of now those efforts have not been successful. Nonetheless, the parties will return to settlement discussions if it appears such discussions may be productive and will continue to prosecute this case in the event that future settlement discussions are unsuccessful.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

      a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

Each side will be limited to ten (10) depositions per side, including experts, if any, and twenty-five (25) interrogatories per side.

      b.      Limitations which any party proposes on the length of depositions.

Maximum of seven (7) hours per deposition.

      c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.

Each side will be limited to twenty-five (25) requests for production and twenty-five (25) requests for admission.

d.      Other Planning or Discovery Orders.

None.

## 9.  CASE PLAN AND SCHEDULE

a.      Deadline for Defendants to Respond to Amended Complaint:  January 19, 2017.

c.      Deadline for Joinder of Parties and Amendment of Pleadings:  February 28, 2017

d.      Fact Discovery Cut-off:  August 31, 2017

e.      Dispositive Motion Deadline:  January 31, 2018

f.      Expert Witness Disclosure.

1.      The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff may call on experts in the field of damages and/or valuation, voice network configuration, and/or local number portability.  Defendants may call on experts in the fields of damages and/or valuation, voice network configuration, and/or local number porting.

2.      Limitations which the parties propose on the use or number of expert witnesses.

Plaintiff is limited to two expert witnesses, and Defendants is limited to two expert witnesses.  Each party may further call one rebuttal expert witness for each of the opposing party's expert witnesses.

3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before September 29, 2017.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before November 15, 2017.

5. If the parties have designated experts, discovery directed at the experts and expert reports shall close on December 15, 2017.

e. Identification of Persons to Be Deposed:

Plaintiff has not yet identified the names of all persons that it will depose, and reserves the right to designate additional or alternate persons once it obtains relevant information. At a minimum, Plaintiff anticipates that it may depose the following Comcast employees: Marlena Mack, Maria Argandona, Keenan Fries, Vincent Andreoni, David Crowell, Kenna McCormick, Joe Trujillo, Karen Goldstein, Linda Birchem, Maribel Villalobos, Rich Rugani, Jessica Troszak, Kristen Stewart, Marjorie Waters, Daniel Straight, Joseph Riccardi, Maegan Klemm, Kisha Cunningham, Christopher Cole, Bill Cribbs, and Andrew Henderson.

Defendants has not yet identified the names of all persons that it will depose, and reserves the right to designate additional or alternate persons once it obtains relevant information. At a minimum, Defendants anticipates deposing the following Flowroute officers and/or employees: Bayan Towfiq, Eric Harber, Justin Grow, and Dan Nordale. In addition, Defendants anticipates deposing representatives of Flowroute's customers, including but not limited to one or more individuals affiliated with the large customer referenced in Paragraph 41 of Plaintiff's Amended Complaint.

f. Deadline for Service of Interrogatories: July 31, 2017.

      g.      Deadline for Service of Requests for Production of Documents and/or Admissions: July 31, 2017.

### 10. DATES FOR FURTHER CONFERENCES

      a.      Status conferences will be held in this case at the following dates and times:

      b.      A final pretrial conference and trial preparation conference will be held in this case on _____ at ___ o'clock _____m Mountain Time. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

### 11. OTHER SCHEDULING MATTERS

      a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

None.

      b.      Anticipated length of trial and whether trial is to the court or jury.

Trial in court for five (5) days is on _____ at ___ o'clock _____m Mountain Time.

      c.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439.

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a)

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this ___ day of _____, 2017.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

APPROVED:

| s/ Tony S. Lee | s/ Samuel L. Feder |
|---|---|
| Tony S. Lee | Samuel L. Feder |
| FLETCHER, HEALD AND HILDRETH | Leah J. Tulin |
| 1300 17th Street North | JENNER & BLOCK LLP |
| Suite 1100 | 1099 New York Avenue, NW |
| Arlington, VA 22209 | Suite 900 |
| Tel:    (703) 812-0442 | Washington, DC 20001-4412 |
| Fax:    (703) 812-0486 | Tel:    (202) 639-6000 |

| | |
|---|---|
| Email: lee@fhhlaw.com | Fax:   (202) 639-6066 |
| | Email: SFeder@jenner.com |
| Attorneys for Plaintiff | LTulin@jenner.com |
| | |
| | Attorneys for Defendants |